# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JUL 23 PM 4: 12

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| WILLIAM WHITSETT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-027 |
| | ) | |
| DR. AJIBADE, DR. DALRYMPLE, | ) | |
| MS. POWELL, Director, MR. BRIAN, | ) | |
| Nurse, MS. CONLEY, Nurse, MR. KING, | ) | |
| Nurse, MS. SIMM, BRIAN OWENS, | ) | |
| Commissioner, Department of Corrections, | ) | |
| JOSE MORALES, Warden, and STATE | ) | |
| MEDICAL DIRECTOR (unknown), in | ) | |
| their individual and official capacities,[1,2] | ) | |
| | ) | |
| Defendants. | ) | |

___

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

___

Plaintiff, who is currently incarcerated at Johnson State Prison ("JSP") in Wrightsville,

Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is

proceeding *in forma pauperis* ("IFP"), the Court screened his original complaint pursuant to

___

[1] It appears from Plaintiff's amended complaint that Plaintiff's name is "William Whitsett, Jr.," rather than "William Jr. Whitsett." (See doc. no. 11, pp. 1, 6.) Plaintiff also clarifies that Defendant Simmons' last name is actually "Simm," and he now names the following additional Defendants: Brian Owens, the Commissioner of the Department of Corrections; the "State Medical Director," whose name is unknown; and Jose Morales, the Warden at JSP. (See doc. no. 11, pp. 1, 4.) The **CLERK** is **DIRECTED** to modify the docket in accordance with the caption of this Order.

[2] Although Plaintiff names "Jaun (sic) Morales" as the Warden of JSP, the Court observes that the correct name of the Warden at Johnson State Prison is Jose Morales. See www.dcor.state.ga.us/NewsRoom/PressReleases/091209g.html (last visited on July 13, 2012).

28 U.S.C. §§ 1915(e) & 1915A. In a prior Order, the Court found that Plaintiff's complaint arguably stated a claim for deliberate indifference to serious medical needs against Defendants Ajibade, Dalrymple, Powell, Brian, Conley, and King based on Plaintiff's allegations that these Defendants had denied him all treatment for a brain tumor. (Doc. no. 8.) In a simultaneously issued Report and Recommendation ("R&R"), the Court recommended the dismissal of Plaintiff's official capacity claims for monetary damages, as well as Defendant Simm, who was not mentioned in the complaint aside from being named as a Defendant in the caption. (Doc. no. 6.) Following issuance of the R&R, Plaintiff sought leave to amend his complaint to address his pleading deficiencies with regard to Defendant Simm. (Doc. no. 9.) The Court granted Plaintiff's request to amend, providing instructions for Plaintiff to follow in amending his pleadings. (Doc. no. 10.)

Plaintiff has now filed his amended complaint in accordance with the Court's instructions. Because the amended complaint supersedes the original complaint, in a simultaneously issued Order, the Court has vacated its prior Order and R&R screening the original complaint. Thus, Plaintiff's amended complaint must be screened in accordance with the IFP statute. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I.    BACKGROUND

In his amended complaint, Plaintiff names the same seven Defendants as in his original complaint, as well as three new Defendants: (1) Doctor Ajibade, who Plaintiff identifies as a physician and Medical Director at JSP; (2) Doctor Dalrymple, another physician at JSP;

2

(3) Ms. Powell, who Plaintiff identifies as a Medical Director at JSP; (4) Mr. Brian, who Plaintiff identifies as a contract nurse at JSP; (5) Ms. Conley, who is also identified as a contract nurse at JSP; (6) Mr. King; another contract nurse at JSP; (7) Ms. Simm; (8) Brian Owens, the Commissioner of the Department of Corrections; (9) the State Medical Director, whose name is unknown; and (10) Jose Morales, the Warden at JSP. (Doc. no. 11, pp. 1, 4.) Plaintiff indicates that he is suing each of the Defendants in his or her individual and official capacities. (See id. at 4.)

Plaintiff alleges that although JSP's medical staff have sent him to numerous outside specialists for "x-rays, blood and lab work-up[s], [and an] MRI," he characterizes this treatment as "stalling tactics." (Id. at 5.) According to Plaintiff, after his medical appointments, he is only given treatment that the outside consulting specialists "contrive," but JSP staff avoid "other expensive medical procedures that would likely cost the state several hundred[s of] thousand[s of] dollars," including "necessary surgery" for an unspecified condition. (Id.) In support of his claims, Plaintiff points to sixteen grievances attached to his amended complaint. (Id. at 10-30.) However, contrary to the Court's instructions that he may not simply incorporate documents by reference (doc. no. 10, p. 3 & n.2), Plaintiff does not discuss the contents of these grievances and simply states, "See attached pages," which he asserts "speak for themsel[ves]."[3] (Id. at 5-6.)

---

[3]Contrary to Plaintiff's assertions, the grievances do not "speak for themselves," which is the very reason the Court instructed him that it is improper to simply attach documents by reference without explaining their significance. Of note, the grievances chiefly consist of mostly illegible complaints of leg and head pain, to which medical staff informed Plaintiff that he had either just been seen by medical staff or was scheduled to be seen shortly for these afflictions, or that he should follow his prescribed medication and treatment. (See doc. no. 11, pp. 10-30.)

Plaintiff alleges, without explanation, that Defendants have deprived him of "proper medical care, knowing [that he] would suffer from the deprivation." (Id. at 6.) He further alleges that "it has become a custom and practice" to deny proper medical care to Plaintiff and "other state prisoners similarly situated" to him. (Id.) As relief, Plaintiff requests that he be sent to a neurologist for a "full range of neurological examinations to determine whether surgery could possibly be a benefit to [his] recovery from [a] stroke [he] suffered several years earlier." (Id. at 7.) Plaintiff further seeks damages, as well as declaratory and injunctive relief in the form of an order that he be given proper medical care and treatment so that he can make a "full recovery." (Id.)

## II. DISCUSSION

### A. No Claim Based on Alleged Deliberate Indifference to Medical Needs

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the amended complaint fails to state a claim for deliberate indifference to a serious medical need against any Defendant.

Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or

4

lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires that a prison official to have disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goebert v. Lee County, 510 F.3d 1312, 1326-27 (11th Cir. 2007); see Farmer, 511 U.S. at 837. The Eleventh Circuit has held that to state a viable Eighth Amendment claim, a prisoner must allege that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Additionally, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment do not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (per curiam); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

As an initial matter, the Court notes that Plaintiff was cautioned that his amended complaint would supersede in its entirety his original complaint and that no portion of the original complaint would be incorporated into his amended pleadings. (Doc. no. 10, pp. 2-3 (citing Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*).) While Plaintiff alleged in his original complaint that he had been denied all medical care for a brain tumor,[4] Plaintiff now alleges that he has received x-rays, blood and other lab work, and an MRI for unspecified medical problems, and he has been provided medication and treatment based on the results of such testing. (Doc. no. 11, pp. 5-30.) Thus, the extent of Plaintiff's allegations regarding his medical treatment at JSP is that Defendants generally provide inadequate treatment for his unspecified medical problems. (Doc. no. 11, pp. 5-7.)

First, Plaintiff has not explained that he has a serious medical need other than his statement that he suffered a stroke "several years earlier." (Id. at 7.) Yet even if the Court were to assume that Plaintiff had an objectively serious medical need, Plaintiff's allegations are insufficient to support a claim that Defendants were deliberately indifferent to that need. As noted above, Plaintiff has received a variety of medical care and treatment while at JSP, but he is dissatisfied that he has not received an unspecified surgical procedure that he desires. (Id. at 5, 7.) However, Plaintiff's dissatisfaction with treatment that he characterizes as "stalling tactics" evince merely a difference in judgment regarding treatment, which is insufficient to establish deliberate indifference to Plaintiff's medical needs. Waldrop, 871 F.2d at 1033.

---

[4]Specifically, in sharp contrast with his amended pleadings, Plaintiff previously asserted that although he met with Defendants Ajibade, Dalrymple, Powell, Brian, Conley, and King and explained to them that he had a brain tumor requiring "emergency treatment," these Defendants refused to provide him any care or treatment whatsoever for his tumor or its side effects. (Compare doc. no. 1, pp. 5-10 with doc. no. 11, pp. 5-6.)

Moreover, to the extent that Plaintiff asserts that Defendants have acted negligently by failing to perform unspecified surgery on him, allegations of negligence likewise do not amount to a claim of deliberate indifference. Harris, 941 F.2d at 1505; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Plaintiff has therefore failed to allege medical care that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Adams, 61 F.3d at 1544.

Furthermore, while Plaintiff asserts generally that he has been deliberately denied proper medical care, he does not name any specific Defendant or other individual at JSP in connection with this alleged constitutional deprivation. However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). In the absence of an allegation of any such connection between a particular named Defendant and any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief regarding his purportedly inadequate medical treatment.

### B.      No Claim Based on Alleged Violations of Other Inmates' Rights

Plaintiff's allegations regarding the injuries allegedly suffered by other inmates also fail to state a claim upon which relief may be granted. While Plaintiff alleges that there is a custom and practice to deny state prisoners proper medical care, Plaintiff may not bring claims on other inmates' behalf, as he lacks standing to assert another inmate's rights. See Miller v. Conway, 331 F. App'x 664, 665 (11th Cir. 2009) (per curiam) (explaining that a prisoner lacks standing to pursue a claim regarding the violation of another prisoner's constitutional rights)

7

(citing Granite State Outdoor Adver., Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003)); see also Church v. City of Huntsville, 30 F.3d 1332, 1335-36 (11th Cir. 1994). Accordingly, the claims Plaintiff attempts to raise on behalf of other inmates at JSP or elsewhere in the Georgia prison system should be dismissed.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief can be gratned, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 23rd day of July, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE